the first time on appeal.  See Supreme Court Rule 8.

\* \* \*

Affirmed.

**S. B. A., Petitioner,**

v.

**K. L. A., Respondent.**

Family Court of Delaware,
New Castle County.

Submitted April 9, 1979.

Decided May 10, 1979.

Dennis J. Siebold, Wilmington, for petitioner.

Frederick S. Kessler, Community Legal Aid Society, Inc., Wilmington, for respondent.

HORGAN, Judge.

Petitioner S.B.A. initiated proceedings in this Court on December 22, 1977 to obtain permanent custody of his minor child S. Prior to his petition, the California Superior Court, by order dated December 14, 1977, had awarded permanent custody of S. to Respondent K.L.A.  The petitioner contests the jurisdiction of the California Court requesting that the decree not be recognized and that this Court enter an order for custody, pursuant to the Uniform Child Custody Jurisdiction Act (the "Act," 13 *Del.C.* § 1901, *et seq.*).

A brief history of the matters leading to the present litigation is as follows:

The parties lived in Delaware from November, 1972 to November, 1974, in Pennsylvania from November, 1974 to September, 1975, and in Delaware from September, 1975 to April, 1976.  At that point in time, the respondent left Delaware accompanied by the parties' four minor children with the stated intent of visiting her family in California.  She subsequently notified the petitioner that she would not return to Delaware to resume marital relations.

The petitioner visited California in May, 1976 and was personally served with process in a divorce action which the respondent had filed in that State.  He retained local counsel who entered his appearance on behalf of the petitioner.  The California Court twice awarded temporary custody of S. to the petitioner.  The California authorities investigated the home of the respondent, and the Delaware authorities investigated the home of the petitioner.  The California Court, after having received both of these reports and holding a hearing at which the petitioner's attorney participated, awarded

custody of all of the parties' children to the respondent. This order, dated December 14, 1977, was never appealed.

The petitioner filed a petition in this Court on December 22, 1977 requesting custody of S. The Judge who heard the case awarded temporary custody of S. to the petitioner but left the matter open for a further evidentiary hearing on the issue of jurisdiction. The case languished in that posture until this decision.

California is a signatory of the Uniform Child Custody Jurisdiction Act. A custody decree issued by a court which had jurisdiction under § 1903 of the Act "binds all parties . . . who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard," unless and until that determination is modified pursuant to the law. 13 *Del.C.* § 1912.

Clearly, the petitioner submitted himself to the jurisdiction of the California Court when he appeared in California in May, 1976, accepted service of the respondent's petition for legal separation, and retained counsel who represented him throughout the entire California proceedings. On at least two occasions, the California Superior Court awarded temporary custody of S. to the petitioner (orders of September 13, 1976 and August 25, 1977). The latter order, which directed a custody investigation to be conducted by the Orange County Probation Department and the appropriate Delaware agency, was entered pursuant to a stipulation filed by the parties through their attorneys with the California Court.

The petitioner did not file this action until the California Court had awarded permanent custody of S. to the respondent. Thus, he turned to this forum only after receiving an adverse ruling. The petitioner's actions in this matter present a blatant example of forum shopping of the exact nature the Uniform Act was enacted to

prohibit. Nonetheless, the Court must still resolve the threshold question of whether the California Court had jurisdiction under the Act to award custody of S.

California was not S.'s "home state" under the Uniform Act,[*] and thus, 13 *Del.C.* § 1903(1), (3), and (4) being factually inapplicable to the case at bar, the Court must look to the other jurisdictional provision of § 1903:

"A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination or modification decree if:

. . . . .

"(2) It is in the best interests of the child that a court of this State assume jurisdiction because:

"a. The child and his parents, or the child and at least 1 contestant, have a significant connection with this State; and

"b. There is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships;"

. . . . .

When the California Court took jurisdiction over this matter, the entire family was located in California. Additionally, both parties appeared in that proceeding. The issue of jurisdiction was never raised in that Court. It was clearly in S.'s best interests to have the matter of custody resolved in the same proceeding that would decide the custody of his brother and sisters.

The Court finds the argument of the respondent's counsel persuasive in that, in addition to S.'s month-long residency in California during which time he attended schools and began to establish friendships, S. had a "significant connection" with California because his mother, brother and sisters, and maternal grandparents, as well as other relatives, lived in that State. The

---

[*] 13 *Del.C.* § 1902(5) reads:

" 'Home state' shall mean the state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period."

respondent's connection with California, where she was raised and married to the petitioner and where her entire family still lives, is obvious.

Furthermore, despite temporary custody having been awarded to the petitioner, the potential that S. could eventually reside in California with his mother, brother, and sisters meant that there was, and still is, substantial evidence in that State concerning his future care, protection, training, and personal relationships. Indeed, the irony of the facts in the case at bar is that, had the California Court awarded, or the parties agreed, that temporary custody of S. be given to his mother, as was the custody of the other three children, the petitioner would, at this late date, have no issue to bring before the Court.

It must be remembered that 13 *Del.C.* § 1901(b) states: "This chapter shall be construed to promote the general purposes stated in this section."

§ 1901(a) provides that the general purposes of the chapter are to:

"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on the well-being of such children;

. . . . .

"(4) Discourage continuing controversies over child custody in the interests of greater stability of home environment and of secure family relationships for the child;

. . . . .

"(6) Avoid the relitigation of custody decisions of other states in this State insofar as it is feasible;"

. . . . .

To allow the petitioner to now successfully challenge the jurisdiction of the California Court, after having consented to its assuming jurisdiction, taking temporary custody of S. pursuant to its orders, and accepting the benefits of its orders for two and one-half years, would render meaningless the general purposes of the Uniform Act as outlined in 13 *Del.C.* § 1901(a), *supra.*

The parties, for almost three years, have acted upon the assumption that the California Court was competent to resolve all of the marital issues between the parties. This, of course, included the custody of S. The respondent and all four children have relied on the fact that the California decision would be a final one, binding on all parties.

It is clear that both California, by 13 *Del.C.* § 1908(2), and Delaware could have asserted jurisdiction over this case. Because the issue is not before it, this Court does not now decide what it would have done with regard to 13 *Del.C.* § 1906 had the petitioner filed his petition for custody shortly after returning to Delaware with S. in May, 1976. The facts of the case at bar require this Court to conclude that the petitioner's conduct in delaying his Delaware custody petition until after California had made a permanent custody award was wrongful, and this Court will not aid him in a forum-shopping expedition at this late date.

In conclusion, this Court finds itself in agreement with the New York Court of Appeals in its holding that:

"Successive contradictory determinations by courts of sister states, even if with 'jurisdiction,' are unseemly and intolerable in a federal union. Such contradictory determinations are hardly justified by the flexibility of *res judicata* and full faith and credit principles in child custody matters. That is the sense of . . . the Uniform Child Custody Jurisdiction Act adopted by many of the states to rid child custody matters of the incubus of child-snatching and forum shopping." *Martin v. Martin*, 45 N.Y.2d 739, 408 N.Y.S.2d 479; 380 N.E.2d 305 (1978).

This Court does not have misgivings about declining jurisdiction and forcing the petitioner to seek his remedy in California. Indeed, should the petitioner be successful in obtaining a modification of the custody order, S. would, at very least, have had an

opportunity to visit with his mother, brother, and sisters for the first time since May, 1976.

In the instant case, for Delaware to assume jurisdiction would promote the evils of forum shopping which the Uniform Act was enacted to prevent. The Colorado Supreme Court has appropriately stated:

> · "In order to 'eliminate jurisdiction fishing with children as bait;' . . . as a general rule, a sister state's custody decree must be enforced . . ., if the state which rendered that decree had jurisdiction at the time it was. entered." *Kraft v. District Court,,* 593 P.2d 321, 323 (Colo.1979).

I find that California did have jurisdiction in accordance with 13 *Del.C.* § 1903(2) to decide the custody of S. and thus decline to exercise jurisdiction in this matter. The December 14, 1977 order of the Superior Court of the State of California awarding permanent custody of S. to the respondent shall be recognized and enforced in this State.