25CA1132 Peo in Interest of GM 02-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1132
Weld County District Court No. 21JV290
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of G.M., a Child,

and Concerning J.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

---

No Appearance for Petitioner

Sandra K. Owens, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    J.M. (father) appeals the juvenile court's allocation of parental responsibilities (APR) for G.M. (the child). Father argues that the court erred by adopting a three-step parenting time plan for E.S. (mother) that allows mother to progress to the next step after ninety days of demonstrated sobriety in each step. We affirm.

## I.    Background

¶ 2    The Weld County Department of Human Services filed a petition in dependency or neglect alleging concerns about, among other things, mother's substance use and mental health and parents' verbal abuse. The court adjudicated the child dependent or neglected and adopted treatment plans for the parents.

¶ 3    About three years after the petition was filed, father was convicted of multiple felony criminal charges and incarcerated. Father remained incarcerated throughout the remainder of the proceeding.

¶ 4    The court placed the child with J.T., a family friend, and designated J.T. a special respondent.

¶ 5    With the Department and father's support, the guardian ad litem (GAL) later moved for an APR to J.T. Mother also filed a motion for an APR to J.T.

¶ 6     Before the hearing on the APR motions, the parties mostly agreed to a proposed APR.  They specifically agreed that J.T. would be the primary residential custodian, and that mother and J.T. would share decision-making authority "with regard to major decisions."  And all agreed that mother and father should receive parenting time.  With respect to mother specifically, the parties agreed to a step-up parenting plan (containing three steps) that required mother to demonstrate sobriety for an identified period before advancing to the next step.  But the parties disagreed on the required period of demonstrated sobriety before mother could progress to the next step.  Mother, the GAL, and the Department proposed ninety days; father proposed 182 days.

¶ 7     The court held a hearing on the narrow issue of whether mother could advance to the next step after ninety days of demonstrated sobriety.  At the time of the APR hearing, mother had been sober for several months and was engaging in supervised weekly visits with the child.  After considering the evidence, the court found that a ninety-day step-up period was in the child's best interests.

## II. Allocation of Parental Responsibilities

¶ 8    Father contends that the juvenile court abused its discretion by allowing mother to advance in her step-up plan after only ninety days of demonstrated sobriety.[1]  We disagree.

¶ 9    The Children's Code governs allocations of parental responsibilities.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18; *see* § 19-1-102, C.R.S. 2025.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *J.G.,* ¶ 19.  A court therefore must allocate parental responsibilities in accordance with the child's best interests.  *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see* § 19-3-507(1)(a), C.R.S. 2025.

¶ 10   The allocation of parental responsibilities is within the juvenile court's discretion.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it

---

[1] Because father is challenging the length of time mother must demonstrate sobriety in each step of the step-up plan, we reject the GAL's assertion that this issue "is factually moot" because only the first ninety-day period of mother's step-up plan is at issue.

misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14. The credibility of the witnesses, the probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are within the court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 11    The court carefully considered father's concerns about mother's sobriety as it related to the child's best interests. The court found that the proposed ninety-day increments were in the child's best interests and balanced the child's need "to see that he has increasing time with his mom as she stabilizes in the community." Recognizing father's "legitimate" concerns about mother's sobriety struggles, the court added additional protections by requiring mother to provide J.T. with documentation of her sobriety and her progress in substance use treatment and by allowing mother to advance a step only upon ninety days of continued clean drug testing. If mother missed scheduled family time "without a valid reason," or "ha[d] a positive or missed" urinalysis, the "phase shall start over."

¶ 12    The court's ruling is supported by the record. While father testified about mother's past substance use struggles, the

caseworker testified that mother had been sober and successfully engaging in treatment for about four months, and that her parenting time had been going well during those four months. The caseworker testified that mother had "figured out . . . a system that works for her with [her mental health] medications." The caseworker also opined that, as of the date of the hearing, mother was compliant with her treatment plan. And the caseworker confirmed that the proposed ninety-day period was based on the child's "attachment to his mom and preference for seeing her."

¶ 13 Even so, crediting his own testimony, father maintains that a longer period in each step was warranted. But it was for the juvenile court to consider and weigh the evidence and resolve any evidentiary conflicts. *See id.* at 250 ("[I]t is important to defer to the [juvenile] court, particularly when it hears contradictory testimony on material issues . . . ."). To the extent father asks us to reweigh the evidence and reach a different conclusion than the juvenile

court, we won't do that.  *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.[2]

¶ 14     Because the court considered the evidence and applied the correct legal standard, we conclude that it did not abuse its discretion by declining father's proposed 182-day step-up period for mother.

### III.   Disposition

¶ 15     The judgment is affirmed.

JUDGE LIPINSKY and JUDGE KUHN concur.

---

[2] Beyond his own testimony, father also relies on evidence that was not introduced at the APR hearing.  But we do not consider evidence that "was not presented to the trial court." *In re Edilson*, 637 P.2d 362, 364 (Colo. 1981).